

FILED
SUPERIOR COURT
OF GUAM

2018 JAN 16 PM 4: 19

CLERK OF COURT

BY:_____

## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| THE PEOPLE OF GUAM,<br><br>                 Plaintiff,<br><br>       vs.<br><br>ERNY A. TITUS,<br><br>              Defendant. | Superior Court Case No. <u>CF0727-16</u><br><br>**DECISION AND ORDER<br>RE<br>EX PARTE MOTION TO VACATE<br>CONVICTION** |

Six months subsequent to the Court's issuance of a Judgment against Defendant Erny A. Titus,[1] and the commencement of deportation proceedings, Titus now seeks to vacate his conviction. In his Ex Parte Motion to Vacate Conviction, Titus claims that his attorney failed to adequately inform him of the immigration consequences following his guilty plea, and that the Court should vacate his conviction as a result. Having evaluated the applicable law and the parties' arguments, the Court GRANTS the Motion to Vacate Conviction.

### I.  PROCEDURAL BACKGROUND

Titus pled guilty to Theft of Property (as a Third Degree Felony), in violation of 9 GCA §§ 43.20(b) and 43.30(a), as amended. According to the Plea Agreement, and as Titus confirmed at the Change of Plea Hearing, Titus admitted that he unlawfully took, obtained, or exercised unlawful control over the movable property of You Are Game, Dededo, intending to deprive that victim of an amount between $500.00 and $1,500.00. Titus agreed to a three-year sentence of

---

[1] Attorney Leevin T. Camacho represents Titus; Assistant Attorney General Sean E. Brown represents the People of Guam.

ORIGINAL

imprisonment, all suspended, with credit for time served. Plea Agreement ¶ 9(a) (May 25, 2017). Also in his Plea Agreement, which he executed, Titus acknowledged to "having been advised, and understand[ing] . . . That if Defendant is an alien, his guilty plea may have immigration consequences, including deportation, and that the Defendant has been counseled by his attorney as to any impact upon his immigration status." Id. at ¶ 1(g).

During the Court's colloquy at the Change of Plea Hearing, the Court asked: "If you are not a U.S. citizen, do you understand your plea of guilty may affect your ability to remain in the United States?" Change of Plea Hr'g at 11:09:54 (May 24, 2017). Titus responded affirmatively. Change of Plea Hr'g at 11:10:00. The Court also confirmed that Titus reviewed the case, the Plea Agreement, his defenses and the consequences of his guilty plea with his attorney. Change of Plea Hr'g at 11:08:00-11:10:20. After accepting the guilty plea, the Court issued a Judgment. J. (May 25, 2017).

Titus now seeks to vacate his conviction. According to Titus, his former attorney, Assistant Public Defender Peter Sablan, "told me that there might be some problems in the future with immigration, but that there was nothing that I could do about it." Decl. Def. Erny A. Titus ¶ 8 (Dec. 7, 2017). Titus claims that his discussion with Sablan over the plea offer focused on Titus not spending time in jail. Id. ¶ 9. "Attorney Sablan did not tell me that, if I pled guilty to Theft (as a Third Degree Felony), it would be considered an aggravated felony or a crime involving moral turpitude I was basically guaranteed to be deported." Id. ¶ 10. Neither party presented evidence that Sablan advised Titus beyond what Titus claims.

Titus declares that had he known that he would be deported, he "would have insisted on going to trial or asked for another plea offer." Id. ¶ 12. Titus claims that he has lived on Guam

since 1994, which accounts for all but one year of his life. He asserts that he lives on Guam with his parents and has a child who resides in Hawaii. *Id.* ¶¶ 2-5.[2]

## II. LAW AND DISCUSSION

### A. Standard for Ineffective Assistance of Counsel

Titus claims he received ineffective assistance of counsel regarding the immigration consequences of his guilty plea, and based on the ineffective assistance, he did not knowingly and voluntarily change his plea. Defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process. *Lafler v. Cooper*, 566 U.S. 156, 162 (2012). A defendant claiming ineffective assistance of counsel must establish that his counsel's performance was deficient and that such deficiency prejudiced his defense. *People of Guam v. Ueki*, 1999 Guam 4 ¶ 6 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "To show deficient performance by counsel, a party must demonstrate that 'counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Ueki*, 1999 Guam 4 ¶ 6 (quoting *Strickland*, 466 U.S. at 687). To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Ueki*, 1999 Guam 4 ¶ 11.

### 1. *Padilla* Applies the *Strickland* Standard to Guilty Plea Challenges

This *Strickland* test also applies to challenges to guilty pleas based on ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). "[T]he negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to effective

---

[2] Titus' immigration status is unclear. His Declaration and Motion do not address his citizenship and residence status in the United States. However, according to information provided to Probation Services, Titus claims to be a citizen of the Federated States of Micronesia. Mag. Summ. Rep. (Dec. 12, 2016).

ORIGINAL

assistance of counsel. The severity of deportation . . . only underscores how critical it is for counsel to inform [a] noncitizen client that he faces a risk of deportation." *Padilla v. Kentucky*, 559 U.S. 356, 373-74 (2010). Consequently, "counsel must inform [the] client whether his plea carries a risk of deportation." *Id.* at 374. "[W]hen the deportation consequences is truly clear," there is also a clear "duty to give correct advice" of such consequences because the failure to do so "clearly satisfies" the first *Strickland* prong. *Id.* at 369, 371.

*Padilla* involved a noncitizen defendant who pled guilty to the transportation of a large amount of marijuana. Padilla sought post-conviction relief, alleging counsel did not advise him of the deportation consequences of his guilty plea, and affirmatively misadvised him that he did not have to worry about immigration issues because he had been in the country for a long time. Padilla asserted he would have insisted on going to trial had received correct advice from his attorney. Noting that Padilla's crime was a deportable offense under the federal deportation statute, the United States Supreme Court found that counsel's failure to inform Padilla of the adverse immigration consequences of the plea constituted deficient performance under the first prong of *Strickland*:

> In the instant case, the terms of the relevant immigration statute are succinct, clear, and explicit in defining the removal consequence for Padilla's conviction. See 8 U.S.C. § 1227(a)(2)(B)(i) . . . . Padilla's counsel could have easily determined that his plea would make him eligible for deportation simply from reading the text of the statute, which addresses not some broad classification of crimes but specifically commands removal for all controlled substances convictions except for the most trivial of marijuana possession offenses. . . . This is not a hard case in which to find deficiency: The consequences of Padilla's plea could easily be determined from reading the removal statute, his deportation was presumptively mandatory, and his counsel's advice was incorrect.

ORIGINAL

*Padilla*, 559 U.S. at 368-69. The Supreme Court did not address the issue of prejudice, instead remanded the case to the Kentucky courts to determine whether Padilla met the *Strickland* prejudice prong. *Id.* at 374.

### 2. Titus Meets Both Prongs under the *Strickland* Standard

In the present case, Titus pled guilty to and was convicted of Theft of Property (as a Third Degree Felony). As in *Padilla*, Titus' Theft crime, for which the term of imprisonment exceeds one year, is a deportable offense under the Immigration and Nationality Act ("INA"). 8 USC § 1101(a)(43)(G). The INA provides that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable," 8 U.S.C. § 1227(a)(2)(A)(iii), and defines "deportable" to mean subject to mandatory, rather than discretionary, removal. 8 U.S.C. § 1227(a). Thus, the applicable federal statutes make clear that a conviction for an aggravated felony automatically triggers the removal consequence and almost always leads to deportation. Unlike convictions for lesser crimes, when noncitizens are convicted of an aggravated felony, they are found ineligible for most statutory forms of discretionary relief. *Moncrieffe v. Holder,* 569 U.S. 184, 187 (2013).

As *Padilla* holds, when deportation is clear and mandatory, the advice surrounding deportation must be clear. 559 U.S. at 369. Theft is succinctly and clearly an "aggravated felony" under the INA, and thus, Titus was entitled to clear advice regarding deportation.

Instead, the evidence indicates Titus received vague advice. That there "might be some problems with immigration" which he could not do anything about, does not contain the clarity *Padilla* mandates. "It is not enough to say 'maybe' when the correct advice is 'almost certainly will.'" *Encarnacion v. State,* 763 S.E.2d 463, 466 (Ga. 2014) (finding counsel provided ineffective assistance by not advising defendant of the realistic probability of deportation

ORIGINAL

following a burglary conviction). Because federal law held clear the deportation consequences for Titus' guilty plea, his attorney had the constitutional obligation to advise him that deportation was presumptively mandatory. Since that did not occur, Titus has satisfied the first *Strickland* prong.

In addition to deficient advice, however, Titus must also demonstrate prejudice. The U.S. Supreme Court holds that a defendant demonstrates prejudice by convincing the court that a decision to reject the plea bargain would have been rational under the circumstances. *Padilla*, 559 U.S. at 372. This is a heavy task for a defendant, as well as a heavy consideration for the Court which believed finality had been accomplished in this case.

Prior to accepting a guilty plea, a court must determine that the plea is "voluntary and not the result of force or threats of or promises apart from a plea agreement." 8 GCA § 60.60. A court shall also determine that the defendant makes the plea knowingly. 8 GCA § 60.50. To accomplish a knowing plea, the Court shall inform the defendant of and determine he understands the nature of the charge, that the defendant can plead not guilty, that a guilty plea will result in no trial, and the maximum possible penalty. 8 GCA § 60.50. In determining whether a plea was voluntarily and knowingly made, a defendant's plea colloquy is given great weight. *U.S. v. Boniface*, 601 F.2d 390, 393 (9th Cir. 1979).

The Court directly asked Titus whether he understood the plea agreement and that his plea of guilty may affect his ability to remain in the United States.[3] The Court, which has an interest in bringing criminal matters to finality, relied on Titus' affirmative representations and

---

[3] The Court's statement complied with the prevailing standard for plea colloquies. Under Federal Rule of Criminal Procedure 11, a court need only advise a defendant that "if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future." A judge need not give specific advice concerning the defendant's individual situation. Fed. R. Crim P. 11 cmt.

made the finding that Titus had knowingly and voluntarily pled guilty. For that reason, the Court must look beyond the self-serving statement that had he known of the high certainty of deportation, Titus would not have pled guilty. Indeed, "Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Lee v. U.S.*, 137 S.Ct. 1958, 1967 (2017).

Looking beyond his mere assertions that he would have not pleaded guilty, the Court is convinced that Titus would have rationally rejected the Plea Agreement had he known of mandatory deportation. Titus has lived all but one year of his life on Guam. His family lives on Guam, and his son lives in Hawaii. If deported, Titus would return to a country unfamiliar to him, without family, and without any ability to visit his son. Even with a fully suspended term of imprisonment, the Plea Agreement's impact of mandatory deportation would have rationally forced Titus to seek an alternative to pleading guilty to Theft of Property (as a Third Degree Felony), such as insisting on a trial. Titus therefore satisfies the prejudice prong of *Strickland*.

### B. Manifest Injustice

Even if Titus meets the *Strickland* test, the Court finds itself obligated to address the legal authority which permits setting aside a conviction:[4] "A motion to withdraw a plea of guilty . . . may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea." 8 GCA § 120.42. The law fails to define "manifest injustice;" the Guam Legislature "left that job to the courts." *People of Terr. of Guam v. Estrebor*, 1987 WL 109390 *3 (D. Guam App. Div.). Other courts which utilize the "manifest

---

[4] Neither party cited to or argued the applicability of section 120.42, but the Court finds it squarely on point.

injustice" standard in evaluating motions to withdraw a guilty plea in a post-conviction setting define the standard differently. For example, in Ohio, a manifest injustice "relates to a fundamental flaw in the proceedings that results in a miscarriage of justice or is inconsistent with the demands of due process." *State v. Taveras*, 2017 WL 1436277 *3 (Ohio Ct. App.). Kansas courts, however, describe manifest injustice as "something obviously unfair or shocking to the conscience." *State v. Kelly*, 248 P.3d 1282, 1286 (Kan. 2011).

The Court finds that Titus meets the Ohio standard, but not the Kansas one. Applying the Ohio standard, the Court finds that because Titus would have not accepted a deal that mandated his deportation, and received inaccurate advice regarding deportation, his guilty plea contains a fundamental flaw.

The Court notes, however, that if the Kansas "shock the conscience" standard applies, Titus fails to meet this standard. Through its colloquy, the Court established that: (1) Titus agreed to tell the truth; (2) he was advised that if he wished to consult with his attorney at any time, the proceedings could be stopped; (3) he agreed he was satisfied by Sablan's advice and representation; (4) he understood his guilty plea may affect his ability to remain in the United States; (5) he reviewed the Plea Agreement with his attorney; and (6) he understood the terms of the Plea Agreement. After all of these representations, the Court is not shocked that Titus finds himself in his present predicament. Titus had ample opportunity to understand or seek clarity on how his guilty plea affected his immigration status.

While the Court's conscience is undisturbed, the Court agrees that under *Padilla*, Titus deserved more information than he received, and that due process did not occur as a result of the ineffective assistance. The Court, however, must emphasize that plea agreements, in general, will remain enforced unless a manifest injustice has occurred.

## III.  CONCLUSION & ORDER

The Court determines that Titus received ineffective assistance of counsel which prejudiced him and led him to plead guilty without being fully informed of the deportation consequences of the guilty plea.  The Court, therefore, GRANTS the Motion to Vacate Conviction, and sets aside the conviction.

The Court sets a Status Hearing on January 26, 2018, at 9:30 a.m. to set a trial date.


SO ORDERED this 16th day of January 2018.

HON. ELYZE IRIARTE
**Judge, Superior Court of Guam**

ORIGINAL

**SERVICE VIA COURT BOX**
I acknowledge that a copy of the original hereto was placed in the court box of:

Date: _____  Time: _____

Deputy Clerk, Superior Court of Guam